IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN MACHESKY, | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-00009 |
| | ) | Judge Gary L. Lancaster/ |
| CHIEF HAWFIELD; LIEUTENANT | ) | Magistrate Judge Amy Reynolds Hay |
| BATES; WAYNESBURG BOROUGH; | ) | |
| WAYNESBURG BOROUGH POLICE | ) | |
| DEPARTMENT, | ) | |
|     Defendants | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

This civil rights action comprises three counts. In Count I, Brian Machesky ("Machesky" or "Plaintiff") alleges violations of 42. U.S.C.§ 1983, contending that the actions of the Defendants have prevented him from working in the field of law enforcement. Count II sets out state claims for defamation, libel, and slander, and Count III alleges that the Defendants interfered with his prospective contractual relations.[1] It is respectfully recommended that the

---

[1] In his jurisdictional statement, the Plaintiff also relies on 42 U.S.C. Section 1985, and 42 U.S.C. Section 2000(e)-5 (Title VII). No further reference is made to either statute in the body of the Second Amended Complaint. In his Brief in Opposition to the instant Motion, the Plaintiff admits that Title VII was cited in error. (Doc. 38 at 1). The Title VII claims should, therefore, be dismissed with prejudice.

The Plaintiff has also failed to allege any facts to support a claim pursuant to section 1985. A plaintiff asserting a violation of this section must allege that "racial or otherwise class-based discriminatory animus lay behind that defendants' actions," and must set forth facts from which a conspiratorial agreement between the defendants can be inferred. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1987).

Machesky's Second Amended Complaint is utterly devoid of allegations sufficient to establish a conspiracy claim, much less a conspiracy claim under section 1985. Race is not mentioned, nor are there allegations to support even a wisp of an inference of any other class based discriminatory animus. Because it does not approach the standard of plausibility established in Bell Atlantic v. Twombly, 127

pending Motion For a More Definite Statement [Doc. 32] filed by the Defendants be construed as a Motion to Dismiss the Second Amended Complaint, and that the Motion to Dismiss be granted in part and denied in part.

## II. REPORT

### A. BACKGROUND [2]

The Plaintiff was employed by Defendant, the Waynesburg Borough Police Department ("WPD"), from February 1994 until May 2005, when he resigned due to a series of conflicts with the WPD Chief of Police, Hawfield ("Hawfield"). (Doc. 29 at 4). The Plaintiff applied for other jobs and, on June 13, 2005, was hired, subject to service of a probationary period, by the Department of Justice ("DOJ") as a correctional officer at the Hazelton federal prison ("Hazelton") located in Bruceton Mills, West Virginia. Id. Immediately after he was hired, the Department of Justice initiated a background check.

As part of the background check, a federal investigator contacted the WPD in July 2005, and spoke with Hawfield and another WPD police officer, Lieutenant Bates ("Bates"). The investigation concluded on or about September 29, 2005. Id. Machesky alleges that he ultimately learned that the report contained the following false and defamatory information supplied by Hawfield and Bates: that the Plaintiff was separated and involved in an extra-marital affair, was intimidated by those who were well educated, disliked the mundane tasks associated with law enforcement, was the subject of disturbing rumors after he left the WPD, did not like the law enforcement chain of command, avoided difficult or inconvenient assigned tasks, was

---

S.Ct. 1955 (2007), Machesky's section 1985 claim should also be dismissed with prejudice.

[2]The facts are taken directly from the Plaintiff's Second Amended Complaint (Doc. 29).

lazy - placing parking tickets on car windows from inside his police vehicle, attempted to protect a friend by asking the witness to an altercation to change his story, was the subject of public complaints, intimidated a complainant, did not enjoy being a police officer and communicated this to others, drank excessively, acted immaturely, lived beyond his financial means, was supported by his father, and made Hawfield uncomfortable leaving his office unlocked.

Before the background check was completed, Machesky used a computer at Hazelwood to email other law enforcement officials "innocuous and humorous political anecdotes regarding gasoline prices[,] the Bush/Cheney administration and Hurricane Katrina." Id. at 5. Machesky felt peer pressure to become a "link in a chain of emailers of thousands of employees including [the DOJ] and various different agencies." Id. He showed his supervisor some of the jokes by turning his computer screen around. Id. On or about September 27, 2005, Machesky was directed by a superior at Hazelton to "cease any further emailing from a government computer." Id. at 13. Prison personnel began an investigation into Machesky's participation in the email chain. In December 2005, Machesky "was made aware that he was still under investigation for the initial emails." Id. at 5.

In March 6, 2006, one of the Plaintiff's fellow correctional officers, another participant in the email chain, was called to speak with personnel investigating "the same emailing incidents for which Machesky was under investigation." Id. This officer was disciplined for his participation in the email chain, spending "one day on the street without pay." Id. On March 7, 2006, Machesky was summoned to the office of human resources at Hazelwood and told that the results of the investigation[3] were unfavorable, and that he, as a probationary employee, could

---

[3]Machesky does not specify whether he is referring to the email investigation, or to the background investigation. The allegations that follow do not resolve the issue.

elect early termination or request that he be allowed to resign. Id. at 5-6. He was terminated the next day.[4]

Machesky states that other probationary employees did the same or worse, yet were not investigated, terminated or forced to resign. Id. at 6. At the same time, however, Machesky clarifies that his termination had nothing to do with sending or receiving email: "Plaintiff lost his job not because of the e-mail, but because of false, defamatory and malicious statements made by Defendants Chief Hawfield, Lt. Bates and the Waynesburg Police Department." Id. at 7. He also contends that he told by a union representative "that the background check was the cause of [his] early termination/ request to resign." Id. at 4-5.

While he was still working at Hazelwood, Machesky applied to be a cadet with the Pennsylvania State Police. Despite having done well on both the written and oral examinations, Machesky withdrew his name from consideration "because with Defendants telling the Federal Government such defamatory statements, these statements would also be made to the PA State Police and any chance of the Plaintiff being considered for cadet would forever be lost." Id. at 7.

Machesky alleges that he has been unable to secure another job in law enforcement, but does not identify other positions for which he applied. He says only that he was told by the Cumberland Township Supervisor that he was not hired for an unspecified job because "Chief Bill Lewis is friends with . . . Hawfield and defamatory matter was spoken to him." Id. at 7.

Machesky filed this action on January 2, 2007. Before the Defendants could respond, he filed an Amended Complaint [Doc. 16]. The Defendants filed a Motion to Dismiss the Amended Complaint [Doc. 21], which was denied without prejudice. [Doc. 28]. The Second Amended

---

[4]The Plaintiff contends that in response to his filing an "EEO case" challenging his termination, the warden at Hazelwood permitted him to file a letter of resignation in order to "clear his name." (Doc. 29 at 6).

Complaint [Doc 29] was filed on July 13, 2007. The Defendants filed the pending Motion for a More Definite Statement in August 2007 [Doc 32].

### B. LEGAL UNDERPINNINGS OF THE SECOND AMENDED COMPLAINT

Machesky alleges that the facts set out in the Second Amended Complaint are sufficient to state cognizable violations of his First and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983 and 1985. He also alleges state law claims based on defamation and tortious interference with contractual rights. The Defendants state that the Plaintiff has not alleged facts sufficient to allow them to formulate a response to the Second Amended Complaint.

The Court agrees that the Second Amended Complaint, lacks the specificity that might reasonably be expected in a case where the Plaintiff is represented by counsel. The court is not convinced, however, that its deficiencies are best addressed by a Rule 12(e) Motion for a More Definite Statement. Federal Rule of Civil Procedure 12(e) reads, in pertinent part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." The court has reviewed the Second Amended Complaint with great care and does not regard the fundamental problem as one of vagueness. Even if the ambiguities identified by the Defendants were made crystal clear, the Plaintiff's allegations would be sufficient to state only one federal claim.

If a pleading is overly vague, the court may address the pleading under Rule 12(b)(6) or Rule 12(e) without regard to how the motion is denominated. 5C Charles Alan Wright & Arthur R. Miller § 1376 (2004). See also Pinson v. Equifax Credit Information Services, LLC, No 06-CV- 0162, 2006 WL 3196074 (N.D. Okla. Nov. 1, 2006). This is the Plaintiff's third attempt to articulate his claims. More importantly, in his brief opposing the Plaintiff's Motion for a More

Definite Statement, the Plaintiff states that he is unable to supply additional facts: "If the defendant cannot reasonably respond to the facts stated in the Complaint [,] that problem should not be expected to be confronted by the Plaintiff to add additional statements that may not apply just so the defendant can prepare a response to Plaintiff's' complaint." [Doc. 38 at 4].

The Court takes the Plaintiff at his word and finds that neither the interests of the parties nor those of the Court would not be served by requiring him to incorporate what he believes to be irrelevant details in a Third Amended Complaint. In order to streamline this litigation and isolate the viable portions of the Plaintiff's claim, the Court elects to treat the Defendants' Motion for More Definite Statement as a Motion to Dismiss.

## C. STANDARD OF REVIEW

The Supreme Court, writing in Bell Atlantic Corp., v. Twombley, 127 S. Ct. 1955, 1974 (2007), held that a complaint challenged pursuant to Fed. R. Civ. P. 12 (b) (6) must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." The court is not obligated to accept inferences unsupported by the facts set out in the complaint, see California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)), and is not required to accept legal conclusions framed as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965. With these standards in mind, the court turns to the substance of the Second Amended Complaint.

## D. ANALYSIS

### 2. THE § 1983 CLAIMS

"The first issue in a § 1983 case is whether a plaintiff [has established] a deprivation of any right secured by the constitution." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972

F.2d 1364, 1367 (3d Cir. 1992). Unless the Plaintiff has alleged facts sufficient to implicate liberty or property interest, his section 1983 claims fail.

### a. The Alleged Deprivation of a Property Interest for Purposes of Procedural Due Process

Although Machesky alleges in conclusory terms that the actions of the Defendants deprived him of a property right [Doc 29 at 8], nowhere in the Second Amended Complaint does he identify or articulate the basis for that right. According to the Supreme Court:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Bell Atlantic, 127 S. Ct. at 1964 -65 (internal citation omitted). The Plaintiff's allegations regarding deprivation of an interest in property do not meet this standard, and the shortcomings cannot be cured by amendment.

"The general rule in Pennsylvania is that full-time municipal police officers enjoy a protected property interest in their position, together with the concomitant right to procedural due process when their employment is terminated." Maule v. Susquehanna Regional Police Com'n, No. 04-CV-05933, 2007 WL 2844587 at *6 (E.D. Pa., September 27, 2007). Here, however, the Defendants did not terminate Machesky's employment. He resigned. [Doc. 29 at 4].

The only adverse job action alleged in the complaint is Machesky's separation from his position as a federal corrections officer. The Defendants did not effect this separation. Moreover, it is undisputed that at the time of his termination, Machesky was a probationary federal

7

employee; his continued employment lay within the discretion of his federal employer. Because of his probationary status, Machesky lacked a property interest in continued employment at Hazelwood. See Booher v. U.S. Postal Service, 843 F.2d 943, 944 (6th Cir. 1988); Harrington v. United States, 673 F.2d 7, 10 (1st Cir.1982); Jenkins v. United States Post Office, 475 F.2d 1256, 1257 (9th Cir.1973).

Machesky has also failed to allege a plausible claim to a property interest in any other law enforcement position. Job applicants do not have a property interest in anticipated employment unless they can demonstrate a legitimate claim of entitlement to the position. McCool v. City of Philadelphia, 494 F. Supp. 2d 307, 321-22 (E. D. Pa. 2007) (citing Foxworth v. Pennsylvania State Police, 402 F. Supp.2d 523, 542 (E.D. Pa. 2005)). Machesky has not alleged - and, in these circumstances lacks any basis for alleging - deprivation of a constitutionally protected property right. All claims premised on Machesky's property interest in employment should be dismissed with prejudice.

### b. The Alleged Deprivation of Liberty and the Procedural Due Process Clause

#### i. Interference with Machesky's right to Send and Receive Email

Employees who claim that they were penalized for exercising a First Amendment right bear a dual burden. They must show that they engaged in constitutionally protected conduct and that the conduct was a "substantial" or "motivating factor" in the government employer's decision. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

Machesky asserts first that his right to freedom of speech under the First Amendment was infringed when he "was singled out for termination/forced resignation for e-mailing . . . ." (Doc.

29 at 5). [5] Elsewhere in the Second Amended Complaint, however, the Defendant defeats his own First Amendment claim when he states that he did *not* lose his job as a result of e-mailing - but was, in fact, terminated or asked to resign as a result of Defendants' statements in connection with his background check. [Doc. 29 at 7].

Even assuming, arguendo, the existence of a First Amendment right to use an employer's email for purposes unrelated to his job, Machesky has failed to establish that the Defendants interfered with this right. Machesky does not allege that he sent or received email when he worked with or for the Defendants, that they knew that he used email at his computer at Hazelwood, or that they instigated or were involved in any way in his being investigated or disciplined for using email. Even if the court were to infer that the information contributed by the Defendants to Machesky's background report caused his federal employer to over-react to his use of email, or that his use of email constituted pretext for his termination, it does not follow that the Defendants were responsible for the transgression of his First Amendment rights.[6]

---

[5] In his "Brief in Opposition of [sic] Motion to Dismiss and Motion for More Definite Statement," Machesky raises allegations that do not appear at all in the Second Amended Complaint. Specifically, he contends, in the most conclusory terms, that the Defendants limited his First Amendment right to petition the government for redress of grievances. In the same bare-bones manner, he states that the malicious and defamatory comments made by the Defendants were made in retaliation for his having filed grievances regarding a "cover-up" associated with a DUI, overtime issues, and officer safety. Even were the court to consider the contentions included in the brief, it would find that the Plaintiff has failed to state a plausible First Amendment claim for interference with his right to petition the government. The recent decision in Foraker v, Chaffinch, 501 F.3d 231 (3d Cir. 2007) suggests that the type of speech at issue was job related and was not, therefore, protected.

The court will not, however, analyze allegations made for the first time in Machesky's brief. It is well established that the Plaintiff may not attempt to amend his Complaint through his brief. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988).

[6] The Court's analysis of Machesky's equal protection claim is similar. Machesky alleges that another probationary corrections officer at Hazelton was investigated for improper use of email and was given a fairly mild punishment. Machesky, however, was forced to accept termination or resignation.

Any difference in treatment between Machesky and other Hazelton employees cannot fairly be attributed to the Defendants who, after all, had no input in or influence over disciplinary sanctions imposed at the federal facility. The link between the Defendants' conduct and Hazelton's decision to

Because Machesky has failed to allege enough facts to establish an email related liberty "that is plausible on its face," his section 1983 claim, insofar as it is based on the alleged deprivation of that interest, should be dismissed with prejudice. Bell Atlantic, 127 S. Ct. at 1974.

### ii. Reputational Injury

To state a claim for deprivation of a liberty interest in reputation, honor, or integrity without procedural due process, a plaintiff must allege that: (1) the defendants placed a stigma on his reputation; (2) the stigmatizing statements were made public by the defendants; (3) the statements were in conjunction with the plaintiff's termination or demotion; and (4) the statements were false. Sciolino v. City of Newport News, Va. , 480 F.3d 642, 646 (4th Cir. 2007).[7]

"Reputation alone is not an interest protected by the Due Process Clause." Hill, 455 F.3d at 236 (quoting Versarge v. Twp. of Clinton, NJ, 984 F.2d 1359, 1371 (3d Cir. 1993)). Instead, a procedural due process claim based on deprivation of a liberty interest in reputation requires that a plaintiff show stigma to his reputation "plus deprivation of some additional right or interest." Id. (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). Thus,

> [i]n the public employment context, the "stigma plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. The creation and dissemination of a false

---

terminate the Plaintiff is far too tenuous to sustain an Equal Protection claim against them. This claim, too, should be dismissed with prejudice.

[7]As the Court has discussed, Machesky has failed to allege a plausible claim that the Defendants interfered with any property right that he may have had in his job. This is not fatal to his claim that he suffered deprivation of a liberty interest in his reputation. A Plaintiff who alleges stigma plus the deprivation of a liberty interest need not have a property interest in the job affected. See Hill v. Borough of Kutztown, 455 F. 3d 225, 238-39 (3d Cir. 2006).

>and defamatory impression is the "stigma," and the
>termination is the "plus." When such a deprivation occurs,
>the employee is entitled to a name-clearing hearing.[8]

Id. (footnote in original omitted). The mandatory "plus" may also be satisfied where the plaintiff shows that the stigma imposed by the defendants' conduct "forecloses his freedom to take advantage of other employment opportunities." Mitchell v. Glover, 996 F.2d 164, 167 (7th Cir.1993) (citing Bd of Regents v. Roth, 408 U.S. 564, 573 (1972)). See also Robb v. City of Philadelphia, 733 F.2d 286 (3d Cir. 1984). The liberty interest at issue is the right to "pursue a calling or occupation, and not the right to a specific job." Piecknick v. Commw. of Pa, 36 F.3d 1250, 1259 (3d Cir.1994) (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 455 (7th Cir.1992)).

The Court finds that Machesky has narrowly alleged enough facts to support a plausible procedural due process claim based on the loss of employment opportunities. He contends that the loss of his federal job was based, at least in part, on the disclosure of defamatory and false statements during the course of a background check. He also alleges that he was told that he had not been or would not be hired - presumably as a law enforcement officer - by Cumberland Township because Defendant Hawfield communicated these statements to the Township's Chief of Police. According to Machesky, he withdrew an application for a position as a cadet with the Pennsylvania State Police because they, too, would do a background check, learn of the defamatory statements, and "any chance of [his] being considered for cadet would forever be lost." [Doc. 29 at 7]. He alleges that his reputation has been impugned and that has lost the

---

[8] The Plaintiff should take note of the fact that in Hill, the Court of Appeals for the Third Circuit clarified that it has yet to decide "whether a plaintiff who prevails on a 'stigma plus' claim may be entitled to remedies other than a name-clearing hearing." 455 F.3d at 235 n.15.

11

opportunity to work in law enforcement because of the Defendants' statements.[9] See Burke v. Chicago School Reform Bd. of Trustees, 169 F. Supp. 2d 843 (N.D. Ill. 2001) (finding that stigmatizing information has been publically disclosed where it is included in a job reference). The Court is convinced that the due process claim based on reputational injury is sufficient under the Bell Atlantic standard to survive a Motion to Dismiss.

### c. Municipal Liability for the Procedural Due Process Claim Based on Reputational Injury

The court addresses the multiple theories of municipality liability asserted by the Plaintiff against the background of his single surviving claim. The Second Amended Complaint reads, in pertinent part:

> 12. Policy making officials of Defendants Waynesburg Borough, Waynesburg Police Department, including Chief Hawfield and Lieutenant Bates, knew or should have known of the unlawful conduct of Defendants who failed to conform to the requirements the Federal constitution [sic] and statutes . . . .
>
> 13. Policy making officials of Defendants Waynesburg Borough, Waynesburg Police Department, including Chief Hawfield and Lieutenant Bates had knowledge of previous complaints for defamatory job references and did nothing to stop the same.
>
> 15. The acts or omissions of Defendants reflect a practice, custom and policy of official conduct under color of state law.

[Doc. 29 at 7-8]. Machesky also contends that policy making officials "failed to properly train Waynesburg Borough law enforcement officials on how to handle a job reference request." Id.

"Municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

---

[9]The Court agrees with the Defendants that the allegations relating to foreclosed job opportunities are vague, and that additional detail will be essential as this litigation progresses. The Court is satisfied, however, that the allegations relating to this claim are clear enough to permit the Defendants to frame a response, and are just sufficient to state a plausible claim for the deprivation of a liberty interest in the pursuit of a career in law enforcement.

official policy, inflicts the injury.'" Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (quoting Monell, 436 U.S. at 694 (1978)). "Policy is made when a decisionmaker [sic] possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembauer v. City of Cincinnati, 475 U.S. 469 (1986)). Custom may be shown by a course of conduct that is not specifically endorsed or authorized by law, but is so well-settled and permanent that it is virtually law. Andrews, at 1480. Thus, " a plaintiff must show that an official who has the power to make policy is responsible for an official policy, or has acquiesced in a well-settled custom." Bielevicz, 915 F.2d at 850. Municipal liability may rest also on a single decision made by an official having final policy-making authority with respect to that decision. Pembaur, 475 U.S. at 701. Proof of pattern and custom is, in this circumstance, unnecessary. See, e.g., McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995).

"[T]he identity of the official policymakers is of key importance to the municipality liability inquiry." Izquierdo v. Sills, 68 F. Supp. 2d 392, 405 (D. Del. 1999). Only when policymakers have been identified is it possible to determine whether they established the challenged policy, acquiesced to a custom, or acted to cause the constitutional violation. Machesky characterizes the individual Defendants named in the Second Amended Complaint as policy makers, but fails to allege that these officers possessed final decision making authority with respect to the content of job references. "The fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembauer, 475 U.S. at 481-82 (Brennan, J., concurring). Moreover, "it is not enough for a section 1983 plaintiff merely to identify conduct attributable to a municipality. The plaintiff must also demonstrate that through

its deliberate conduct the municipality is the 'moving force' behind the injury alleged." Board of County Commissioners of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997).

A municipality's failure to train its employees and officers constitutes a "policy" actionable under § 1983 only where the failure demonstrates deliberate indifference to the rights of the person affected. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir.1997). A showing of simple or even heightened negligence is not enough. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d. Cir. 2000). Similarly, it is not enough to show that municipal officers could have been better trained or that additional training could have reduced the overall risk of constitutional injury. See Canty v. City of Philadelphia, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing Colburn v. Upper Darby Twp., 946 F. 2d 1017, 1029-1030 (3rd Cir. 1991)). The plaintiff alleging failure to train is also required to allege facts "demonstrat[ing] a 'plausible nexus' or 'affirmative link' between the municipality's failure to train and the specific deprivation of constitutional rights at issue." Id. at 1213 (citation omitted).

Despite the lack of detail underlying the allegations of municipal liability, the Court finds that the allegations are sufficient to allow the Defendants to formulate a response, and to meet the plausibility standard set out in Bell Atlantic. The Court has, however, highlighted the law governing municipal liability under section 1983 in order to demonstrate the sizable gap between what the Plaintiff has alleged in the Second Amended Complaint, and what he must establish should this matter proceed to summary judgment.[10]

---

[10] In the interest of completeness, and in light of the Supreme Court's admonition that qualified immunity questions be resolved as early in the proceedings as possible, Saucier v. Katz, 533 U.S. 194, (2001), the court notes that this case

> illustrates the incompatibility between the concept of notice pleading and the qualified immunity doctrine . . . . Here, the [Plaintiff has] crafted a complaint lacking in detailed factual

14

### d. Claims Based on the Substantive Due Process Clause

Machesky has failed to allege that he has been deprived of a property or liberty interest implicating substantive due process. In order to prevail on a non-legislative substantive due process claim,[11] a plaintiff must allege facts sufficient to show that he has been deprived of a *fundamental* liberty or property interest within the meaning of the Fourteenth Amendment. Only if a fundamental right has been infringed will a court consider whether the infringement was the result of an egregious or "conscience shocking" abuse of government power. See County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (stating that substantive due process claims require plaintiff to demonstrate that arbitrary and capricious governmental acts deprived him of protected interest); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-27 (3d Cir. 2003) (holding that to establish a substantive due process claim, plaintiff must show violation of a protected interest); Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (explaining that substantive due process does not apply every time a governmental entity

---

allegations. While the complaint complies with the simplified notice pleading standard of the Federal Rules, which itself is a close call, it clearly does not provide good fodder for the framing of a qualified immunity defense.

Thomas v. Independence Twp., 463 F.3d 285, 299 (3d Cir. 2006). "Qualified immunity is an individual defense available to each individual defendant in his individual capacity." Bakalis v. Golembeski, 35 F.3d 318, 326-27 (7th Cir.1994).
    Machesky does not specify whether the individual Defendants are sued in their official or individual capacities. This failure is easily remedied by Plaintiff's amending the complaint. It is expected that the Plaintiff will seek leave to do so. See Davis v. Pa Dept. of Corr., Civ. No. 05-1558, 2006 WL 2927631 at *5 (W.D. Pa. Oct. 12, 2006).

   [11]There is no dispute that the acts alleged in this matter were executive in nature - pertaining to employment actions taken with respect to Machesky alone. Fowler Nash v. Dem. Caucus of Pa. House of Representatives, 469 F.3d 328, 339 (3d Cir. 2006).

deliberately or arbitrarily abuses governmental power; it applies only where the plaintiff shows a violation of a fundamental right derived from the Constitution).

Machesky has not identified and the record does not establish a fundamental liberty or property interest impaired by the conduct of the Defendants. To date, the Court of Appeals for the Third Circuit has held that only property interests in land are fundamental for purposes of substantive due process. Id. 141. Public employment is not, therefore, a fundamental right entitled to substantive due process protection. Id. at 142-43 .

The range of liberty interests protected by the substantive due process clause is also circumscribed. Only fundamental rights and liberties "'deeply rooted in this Nation's history and tradition'" and "'implicit in the concept of ordered liberty'" are entitled to substantive due process protection. Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal citations omitted). See also Chavez v. Martinez, 538 U.S. 760, 776 (2003) (same). These have included the fundamental right to marry, see Loving v. Virginia, 388 U.S. 1 (1967); to have children, see Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); to direct the upbringing of one's children, see Meyer v. Nebraska, 262 U.S. 390 (1923); to marital privacy, see Griswold v. Connecticut, 381 U.S. 479 (1965); to abortion, see Roe. v. Wade, 410 U.S. 113 (1973); to personal control of one's medical treatment, see Cruzan v. Dir., Missouri Dep't Health, 497 U.S. 261 (1990); and to bodily integrity, see Rochin v. California, 342 U.S. 165 (1952). "To the extent that [a plaintiff's] substantive due process claim [is] be based on a reputational injury that decreased his 'ability to earn a living,' it also fails." Hill, 455 F.3d at 235 (quoting Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399-404 (3d Cir. 2000)).

Machesky has failed to satisfy the threshold showing necessary to establish a violation of substantive due process. Accordingly, the court does not reach the question of whether the totality of the Defendants' conduct was sufficiently egregious to "shock the conscience."[12]

### III. CONCLUSION

For the reasons set out above, the Court recommends that the pending Motion for a More Definite Statement [Doc. 32] be treated as a Motion to Dismiss. It is further recommended that the Motion to Dismiss be granted with prejudice as to all federal claims, with the exception of the Plaintiff's Fourteenth Amendment procedural due process claim - including the allegations of municipal liability - based on the alleged deprivation of his liberty interest in pursuing a career in law enforcement. The Court should retain supplemental jurisdiction over the state law claims, but reserve the right to decline jurisdiction should the Plaintiff be unable adequately to support his federal claim at summary judgment.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

---

[12] It is, however, worth noting that Machesky has not cited - and the court has not located - case law from any jurisdiction finding the "shocks the conscience" standard to have been met in any remotely analogous public employment context.

Dated: 23 January, 2008


cc: Hon. Gary L. Lancaster
United States District Judge

All counsel of record by Notice of Electronic Filing